## In re Anonymous No. 43 D.B. 92

Disciplinary Board Docket no. 43 D.B. 92.

FRIEDMAN, *Member,* July 31, 1995—

## I. HISTORY OF PROCEEDINGS

On May 5, 1992 a petition for discipline was filed, containing three charges against respondent for failure to fulfill client obligations in two separate cases. The matter was subsequently referred to Hearing Committee [ ], chaired by [ ], Esq., and included [ ], Esq. and [ ], Esq.

Following a pre-hearing conference on September 22, 1992, a hearing was held on September 29, 1992. The parties agreed to submit the matter to the board in accordance with the abbreviated procedure under Rule 89.181 of the Disciplinary Board Rules and Procedures. In accord with that procedure, the Hearing Committee rendered a verdict and recommendation of a private reprimand with probation for one year.

The matter was adjudicated at a meeting of the Disciplinary Board held on December 18, 1992. By order of January 5, 1993, the matter was remanded back to the Hearing Committee in order to fix a briefing schedule and to submit formal findings and recommendations to the board.

On February 26, 1993, petitioner filed a brief to the Hearing Committee. A supplemental Hearing Committee report was filed on June 14, 1993, which recommended that respondent receive a public censure with probation of one year with conditions. Neither party filed exceptions to the report. The matter was adjudicated at a meeting of the board held on August 27, 1993.

## II. FINDINGS OF FACT

The following findings of fact are based upon the stipulation of the parties as well as documentary and testamentary evidence presented to the Hearing Committee.

(1) Petitioner, whose principal address is located at Suite 3710, One Oxford Centre, Pittsburgh, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent, [ ], was born in 1949 and admitted to the practice of law in the Commonwealth of Pennsylvania in 1974. His office is located at [ ].

*Charge I—[A] (Support)*

(3) In June 1983, respondent was retained by complainant, [A], to represent him in his divorce and related

matters filed in the Court of Common Pleas of [ ] County. (Stip. 3.)

(4) Throughout the representation, complainant made regular payments for respondent's services, which totalled about $1,135. (Stip. 4.)

(5) By order dated April 6, 1989, the court confirmed a recommendation by a hearing officer that complainant's wife receive an award of child support. (Stip. 5.)

(6) Shortly thereafter, complainant requested that respondent file exceptions to the amount of the award and raise that matter at a hearing. (Stip. 6.)

(7) On or about April 13, 1989, respondent filed exceptions and oral argument was scheduled for May 19, 1989 before Judge [B]. (Stip. 7.)

(8) Respondent charged complainant the amount of $250 for his work on "PFA" matters, and another $250 for his work in the child support matter, as stated on a bill of April 20, 1989. On this bill, respondent acknowledged the argument scheduled for May 19, 1989. (Stip. 8.)

(9) Respondent was given leave by the court to later file a brief and transcript in support of the exceptions to the order. (Stip. 9.)

(10) Respondent failed to file a brief or transcript in support of the exceptions. (Stip. 10.)

(11) By order dated July 17, 1989, the court stated that it had not received the brief and transcript from respondent and noted that it had made further inquiry by telephoning respondent. It further stated that respondent failed to return the call and as a result, the court dismissed respondent's exceptions *with prejudice.* (Stip. 11.)

(12) Respondent failed to inform complainant that the exceptions had been dismissed with prejudice. (Stip. 12.)

## *Charge II—[A] (Bankruptcy)*

(13) In November 1989, respondent agreed to prepare the necessary forms to enable complainant to file for bankruptcy. Respondent informed complainant that he would charge $200 to perform this service. (Stip. 14.)

(14) Complainant was responsible for filing the forms for bankruptcy and representing himself. (Stip. 15.)

(15) When complainant informed respondent that he could not afford the $200 at that time, respondent stated that he was not worried about the money, since complainant had always paid in the past. (Stip. 16.)

(16) On or about February 20, 1990, complainant purchased the necessary bankruptcy forms himself and sent them to respondent, along with a list of all his creditors and account numbers. (Stip. 17.)

(17) Between March and July of 1990, complainant called respondent approximately six times to inquire about respondent's progress with the bankruptcy forms. On each occasion, respondent was unavailable, so complainant left a message requesting respondent to return his calls. (Stip. 18.)

(18) Respondent did not return any of complainant's calls. (P.E. 1, para. 19.)

(19) In late July 1990, complainant reached respondent by telephone. At that time, he informed respondent that he was having difficulty with some of his creditors and would like for respondent to expedite the bankruptcy matter. Respondent communicated to complainant that he had already completed the documents and mailed

them, saying that he was surprised that complainant had not yet received them. (Stip. 20.)

(20) Complainant did not receive the documents from respondent. (Stip. 21.)

(21) Thereafter, from late July until the early fall of 1990, complainant telephoned respondent on several occasions and left messages. Respondent failed to return any of these calls. (Stip. 22.)

(22) In the early fall of 1990, complainant reached respondent by telephone. Respondent claimed that he had mailed copies of the completed documents to complainant. Complainant then terminated respondent's services and requested that respondent deliver all of his files, including the ones involving the divorce and custody proceedings, to his work place. Respondent agreed. (Stip. 23.)

(23) Respondent failed to deliver complainant's files as agreed. (Stip. 24.)

(24) Between October and December of 1990, complainant called respondent about 25 times, leaving messages for respondent to return his calls. Respondent failed to return any of the calls. (Stip. 25.)

(25) In a letter dated December 10, 1990, complainant again demanded that respondent return his files. However, he did not mail the letter, since he reached respondent by phone on that same date. (Stip. 26.)

(26) During the telephone conversation of December 10, 1990, respondent claimed that he had already mailed the bankruptcy papers to him, and that he had shipped all of the files by United Parcel Service. Respondent added that the only documents in his possession were "copies." (Stip. 27.)

(27) Also during this conversation, respondent agreed to hand-deliver the "copies" to the home of complainant's neighbor on December 11, 1990. (Stip. 28.)

(28) Respondent failed to deliver these papers as agreed. (Stip. 29.)

(29) Complainant sent a certified letter dated December 28, 1990 to respondent in which he enclosed a copy of the letter of December 10, 1990. (Stip. 30, 31.)

(30) These letters were eventually returned to complainant because respondent failed to claim the certified mail. (Stip. 32.)

(31) As of the hearing on September 29, 1992, respondent had not delivered the requested files. (P.E. 1, para. 33.) However, they were finally delivered to petitioner in late January 1993.

(32) Respondent's repeated representations to complainant in which he stated that he had taken action to deliver complainant's files were knowingly false. (Stip. 34.)

### Charge III—[C]

(33) In about July 1991, complainant, [C], decided to enter into discussions concerning the sale of her house to [D] and [E]. (Stip. 36.)

(34) On July 11, 1991, complainant met with respondent to discuss the possible sale of her house. At that meeting, complainant paid respondent the amount of $180 for his representation in the sale. She also gave necessary papers to respondent, and he told her that he would draw up the required papers and contact her on July 12 or 13, 1991. (Stip. 37.)

(35) At the time that respondent agreed to represent complainant, she informed him that she was in financial

difficulty and in danger of losing her home if she did not sell it. (Stip. 38.)

(36) Complainant did not hear from respondent. Beginning on July 18, 1991, and continuing each day thereafter for the next three weeks, she attempted to contact him by telephone. Respondent, however, failed to return her calls. (P.E. 1, para. 39.)

(37) On August 2, 1991, respondent called complainant after she had telephoned his mother and left a message to return her calls. He informed her that he would call the attorney for the buyers, [F], Esq., on August 5, 1991. (Stip. 40.)

(38) On August 6, 1991, complainant called Attorney [F's] office and discovered that respondent had not been in contact. (Stip. 41.)

(39) From August 6, 1991 until August 27, 1991, complainant again attempted to contact respondent by telephone. She left messages in which she requested that respondent return the papers which she had given him and inquired whether he still wanted to handle the sale of her house. (Stip. 42.)

(40) Respondent failed to return complainant's calls or to deliver the information or documents which she requested. (Stip. 43.)

(41) By letter dated August 21, 1991, complainant requested that respondent return her papers and inform her whether he still wished to handle her case. She stated that if she did not hear from respondent by August 26, 1991, she would report the matter to the Disciplinary Board. (Stip. 44.)

(42) Having failed to hear from respondent from August 26 to September 7, 1991, complainant attempted to contact respondent by telephone. Even though she

left messages, respondent failed to return her calls. (Stip. 45.)

(43) Having failed to hear from respondent, complainant retained other counsel, [G], Esq., concerning the sale of her house. (Stip. 46.)

(44) In about late August 1991, Attorney [G] telephoned respondent and left messages requesting respondent to return complainant's papers to him. (P.E. 1, para. 47.)

(45) Respondent failed to return Attorney [G's] calls. (P.E. 1, para. 48.)

(46) Respondent returned complainant's papers to petitioner on the day of the hearing. (N.T. 8.)

## III. CONCLUSIONS OF LAW

By virtue of his misconduct, respondent has violated the following Rules of Professional Conduct:

(1) R.P.C. 1.3—which requires that a lawyer shall act with reasonable diligence and promptness in representing a client.

(2) R.P.C. 1.4(a)—which requires that a lawyer shall keep a client informed about the status of a matter and promptly comply with reasonable requests for information.

(3) R.P.C. 1.16(d)—which requires, upon termination of representation, that a lawyer shall take steps to the extent reasonably practicable to protect a client's interests.

(4) R.P.C. 8.4(c)—which prohibits a lawyer from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation.

## IV. DISCUSSION

The primary goal of the disciplinary system is to protect the public from unfit attorneys and to maintain

the integrity of the disciplinary system. *Office of Disciplinary Counsel v. Stern,* 515 Pa. 68, 80, 526 A.2d 1180, 1186 (1987). In this manner, public confidence in the legal profession is preserved. *Id.* However, the system was not created to impose punishment. Instead, it strives to determine the fitness of an officer of the court to continue in that capacity and to protect the public from the official ministration of persons unfit to practice. *Office of Disciplinary Counsel v. Duffield,* 537 Pa. 485, 644 A.2d 1186 (1994).

Each case is decided upon the totality of its facts. *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 472 A.2d 186 (1983). The board possesses the power and the duty to review conclusions of hearing committees and to prepare and forward its own findings and recommendations to the Pennsylvania Supreme Court. Pa.R.D.E. 204(c)(6). In the instant matter, the threshold question is whether the petitioner's misconduct indicates an unfitness to practice law. *Id.* at 281, 472 A.2d at 190. The board concludes that respondent's conduct and the relevant circumstances warrant the sanction of a private reprimand with probation in order to reverse a pattern of misconduct and protect the public.

The essence of the misconduct is respondent's inability to manage a solo practice. In the past, he has received two informal admonitions and a private reprimand for the same misconduct. Such conduct would seem egregious if several mitigating factors were not present. The Hearing Committee stated that "the misconduct in this case is not as serious as the Hearing Committee might run across in other cases. There has been no misappropriation . . . there's no real financial loss apparent." (N.T. 35.) In situations lacking client injury and showing the absence of intent, a private reprimand can be an effective sanction.

Respondent's pattern of misconduct arose primarily from lack of administrative skill, which is considered to be a mitigating factor. *In re Anonymous No. 58 D.B. 89,* 10 D.&C.4th 545 (1990). The board concludes that he was responding and would continue to respond in a structured environment. Respondent has been working as an associate for the firm of [H] P.C. and admits that he is improving. (N.T. 34.)

In addition, the board has determined that probation with a practice monitor would enhance the sanction of a private reprimand. Probation is one of the six types of discipline and may be imposed in conjunction with a private reprimand. Pa.R.D.E. 204(a)(5). Probation with a practice monitor has also been imposed in a similar case. *Office of Disciplinary Counsel v. Geisler,* 532 Pa. 56, 614 A.2d 1134 (1992). *Geisler* involved a sanction of suspension; however, it can be distinguished from the instant matter. *Geisler* involved a high-volume practice which injured many clients. In contrast, the instant matter involved two isolated incidents in which clients were not injured. Furthermore, respondent's current employer has agreed to serve as a practice monitor.

## V. DETERMINATION

The Disciplinary Board of the Supreme Court of Pennsylvania determines that the respondent, [ ], should receive a private reprimand with probation of one year, subject to the following conditions:

"(1) [H], Esquire, is hereby appointed as respondent's practice monitor;

"(2) [H] will meet with respondent on a monthly basis to review respondent's workload and verify deadlines and regular client contact;

"(3) Said review shall specifically address whether respondent has returned client telephone calls; kept his clients informed as to the status of their matters; replied to requests for information; and, surrendered any client files if discharged;

"(4) [H] shall file quarterly written reports on a board-approved form with the secretary; and,

"(5) [H] shall immediately report to the secretary of the board any violation of the respondent of the terms and conditions of probation."

In addition, the board has determined that respondent pay all necessary costs and expenses incurred in the investigation and processing of this matter.

Messrs. Hill, Paris, Sloane, Saltz and Dean Carson did not participate in the adjudication.

## ORDER

POWELL, *Chairman,* July 31, 1995—And now, July 31, 1995, upon consideration of the report and recommendation of Hearing Committee [   ] filed November 3, 1992, and the supplemental report filed June 14, 1993; it is hereby ordered that the said [respondent] of [   ] County be subjected to private reprimand by the Disciplinary Board of the Supreme Court of Pennsylvania as provided in Rule 204(a)(5) of the Pennsylvania Rules of Disciplinary Enforcement.

It is further ordered that respondent shall be placed on probation for a period of one year. [H], Esquire, is hereby appointed as respondent's practice monitor. The practice monitor shall do the following during the period of respondent's probation:

142

"Conditions:

"(1) Meet with the respondent on a monthly basis to review respondent's workload and verify deadlines and regular client contact;

"(2) Said review shall specifically address whether respondent has returned client telephone calls; kept his clients informed as to the status of their matters; replied to requests for information; and, surrendered any client files if discharged;

"(3) File quarterly written reports on a board-approved form with the secretary; and

"(4) Shall immediately report to the secretary of the board any violations of the respondent of the terms and conditions of probation."

Failure to comply with the above conditions shall be grounds for reconsideration of this matter under the specific provision of Enforcement Rule 203(b)(2) and Disciplinary Board Rule 87.53(b).

Costs are to be paid by the respondent.

Messrs. Hill, Paris, Sloane, Saltz and Dean Carson did not participate in the adjudication.